UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARRY PARTRICH,

    Plaintiff(s),

v.

DONNA FARBER, an individual, and
STEVEN SOFFERIN, an individual,

    Defendant(s).
_____/

Case No. 2:07-cv-14853

HONORABLE STEPHEN J. MURPHY, III

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANT STEVEN SOFFERIN (docket no. 33), GRANTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANT DONNA FARBER (docket no. 34) AND DENYING MOTION FOR SUMMARY JUDGMENT BY HARRY PARTRICH (docket no. 35)**

This is a family dispute that has degenerated into two court actions. The current action has been brought by the plaintiff, Harry Partrich, against his stepdaughter Donna Farber and stepson Steven Sofferin, based on the conduct of Farber and Sofferin in prosecuting claims in their mother Joan Partrich's estate. This action originally included claims for malicious prosecution, abuse of process and intentional infliction of emotional distress, but the Court previously granted defendants' motion to dismiss Partrich's claims for malicious prosecution and intentional infliction of emotional distress. The Court found, however, that Partrich's complaint did state a prima facie claim of abuse of process under Michigan law, and therefore denied defendants' motion to dismiss that claim.

Currently before the Court are three cross-motions for summary judgment, one by plaintiff Harry Partrich, and one each by defendants Donna Farber and Steven Sofferin. For the reasons stated below, the Court will deny summary judgment to Harry Partrich and will grant summary judgment to defendants Farber and Sofferin on Partrich's abuse of process claim, the sole remaining count of the complaint.

## FACTS

Defendants Steven Sofferin and Donna Farber are the only children of Joan Partrich, the deceased wife of the plaintiff Harry Partrich. Joan Partrich's maiden name was Joan Grey and her previous married name was Joan Sofferin. Joan married Harry Partrich in 1983, when they were both living in Florida. The marriage was Joan's second and Harry's third marriage. Joan's previous marriage and Harry's previous two marriages had ended in divorce. R. Partrich dep. 16. Harry was about 14 years older than Joan. Id., 27.

Joan was estranged from both her children, particularly her daughter Donna, for periods of time, although there is some dispute as to the reason and extent of the estrangement. Harry Partrich and Richard Partrich, Harry's son, testified that this was a long-term estrangement and based on Donna's behavior, and only improved at the end of Joan's life because Joan's mental problems made her unable to recall the estrangement. R. Partrich dep. pp. 38, 56, 114; H. Partrich dep. p. 61. Donna, on the other hand, testified that her relationship with her mother was generally excellent, and any estrangement was the result of Joan's alcohol abuse and declining mental function. Farber dep. pp. 28-32.

Harry and Joan Partrich lived in Florida for about 20 years. During the later part of this time period, Joan began to abuse alcohol. Richard Partrich dep. pp. 31-40. Joan Partrich did not receive any treatment for her alcohol problem until December 2000, where she apparently collapsed at the couple's condominium, at which point Harry Partrich contacted 911 and had Joan admitted to Savannahs Hospital for inpatient alcohol rehabilitation. R. Partrich dep. pp. 34-36, 41-44. Joan Partrich stayed at Savannahs Hospital for about one month, until January 2001, and afterwards stopped drinking. R. Partrich dep. pp. 43, 46.

Joan Partrich's mental health continued to decline after her release from Savannahs. R. Partrich dep. p. 47. In March 2003, Harry Partrich contacted Steve Sofferin about his

2

mother's health and Harry's difficulty in caring for her.  Farber dep. p. 31.  Steven Sofferin and Donna Farber traveled to Florida and observed that their mother was acting erratically. Steve Sofferin dep. p. 41-43.  During this visit, Harry Partrich again called 911 and again had Joan hospitalized.  R. Partrich dep. pp. 57-58.  Joan also executed in March 2003 a durable power of attorney appointing Harry as her attorney-in-fact.  Partrich Op. Ex. 3.  The record does not reflect who prepared the power of attorney.

Harry and Joan moved back to Michigan in June 2003.  Once moving to Michigan, Joan was repeatedly seen by doctors for mental and behavioral issues. See Partrich Opp. Exs. F, G and H.  The Michigan doctors diagnosed dementia and Parkinson's disease, and noted personality changes, memory loss and unusual behavior.  When Joan was seen by a neurologist in Michigan immediately after the move, Joan was unable to identify the month, day or date and could not identify the president.  Partrich Opp. Ex. F.

Joan began attending an adult daycare program at Brown Rehabilitation Center.  Joan was subsequently hospitalized for a period at Beaumont Hospital, Royal Oak.

In November, 2003, Joan executed a Medical Durable Power of Attorney naming Harry Partrich as her attorney in fact and "patient advocate" to make medical decisions regarding her medical care in the event of her inability to make medical decisions for herself.  Sofferin Summary Judgment Motion, Exhibit E.  There are facts in the record that would support a finding that Joan was incompetent at the time this power of attorney was executed.  The record does not reflect who prepared the medical durable power of attorney.

In January 2004 Joan was again hospitalized at Beaumont Hospital.  Upon discharge from Beaumont, Joan was admitted to the Danto Center, a nursing home, for full-time care.

3

Partrich dep. pp. 79-80.  Donna visited Joan on January 13 at Danto and found her looking well and alert.  Farber dep. pp. 57-58.

On January 14, 2004 Steven Sofferin and Donna Farber attended a business conference in Las Vegas, Nevada.  Farber dep. pp. 58-60.  On January 15, Donna received a call that Joan had fallen at Danto the evening of January 14 and sustained a cut on her head requiring stitches and had been taken to Beaumont Hospital.  Farber dep. p. 58.  Donna testified that she learned later that Harry refused to immediately authorize Danto to order an ambulance to transport Joan across the street from Danto to the emergency room at Henry Ford Hospital in West Bloomfield.  Farber dep. p. 62-63.

Joan took a turn for the worse.  She had stopped eating and drinking on her return to Danto, she had pneumonia and needed antibiotics.  Harry had instructed Danto not to administer antibiotics until he authorized them.  Sofferin dep. pp. 54-55.  On January 18, 2004, the staff at Danto discovered that Joan had become dehydrated and efforts to insert an IV were futile due to the level of her dehydration.  Joan's children initially asked or demanded that a "cut-in" procedure be done to hydrate Joan, but ultimately, based on the doctors' advice, all parties agreed not to do this.  Joan died on January 20, 2004 at the age of 70.

After Joan's death, there was a rift between Harry Partrich and Donna and Steve.  Harry and Richard testified that Donna and Steve became belligerent and threatening and demanded Joan's property, while Donna testified that they were abruptly told by Richard that they (Donna and Steve) were no longer part of the family.  There were also disputes about the funeral and burial.  Farber and Sofferin paid for Joan's burial plot and headstone, and had a headstone placed  at her grave bearing Joan's maiden name of Grey, which action Harry believed was malicious since her legal name was Partrich.

4

Joan died without a will. H. Partrich dep. p. 82. Donna and Steve each testified, however, that they believed that their mother had a will. Sofferin dep. p. 88; Farber dep. p. 85. On September 16, 2004, Donna petitioned the Oakland County Probate Court to open an estate. Partrich Opp., Ex. 9. On December 9, 2004, Judge Barry Grant entered a consent order modifying the petition, appointing Harry Partrich as personal representative of the estate, and ordering Harry Partrich to obtain medical records necessary to investigate a wrongful death lawsuit or survivors action and to forward those records to the attorney for Donna Farber and Steven Sofferin. Partrich Opp., Ex. 10. The order also determined that Joan's heirs were Harry Partrich, Donna Farber and Steven Sofferin. *Id.*

Harry's attorney filed a petition for final accounting in the Oakland County Probate Court to close Joan's estate, which petition represented that the estate had no assets, no expenses, and no income. Partrich Opp., Ex. 11. Harry and Joan's main asset was a joint account with right of survivorship in the amount of approximately $350,000. At least $200,000 of this money appears to have come largely from an inheritance Joan received from her mother and which passed by operation of law to Harry upon Joan's death. R. Partrich dep. p. 30. Steven Sofferin was aware of the account and the amount of money in it because he was involved in some of Harry and Joan's investments earlier. R. Partrich dep. pp. 27-30.

On November 10, 2005, an attorney for Donna Farber sent a letter to the probate attorney for Harry Partrich enclosing proposed objections to Harry Partrich's final accounting. Partrich Summary Judgment Motion, Ex. 1. The letter stated that the objections would not be filed if Harry Partrich agreed to a settlement of $175,000 to Joan's children and the return of various items of personal property, including family photos, items Joan inherited from her parents, and Joan's personal property prior to her marriage to

5

Harry. *Id.* The letter stated that the objections would be filed if Harry Partrich did not agree to the settlement or at least agree to negotiations toward a settlement. *Id.* The attached document objected to the final accounting on the grounds that the estate did in fact have assets, which assets included a slayer statute action against Harry Partrich based on his failure to provide necessary medical service to the decedent and a legal malpractice action against Richard Partrich for preparing a power of attorney for Joan at a time he knew she was incompetent. Partrich Summary Judgment Motion, Exhibit 2. Harry did not agree to settle or negotiate, and Farber and Sofferin filed their objections on November 23, 2005.

Harry Partrich responded to the objections by stating that Joan's illness was irreversible and that Donna and Steven had not sought an autopsy or attempted to bring criminal charges against Harry. Partrich Opposition, Exhibit 14. The response also stated that Donna left Joan's bedside less than one hour before her mother was found dead, and therefore Donna should be investigated rather than Harry. *Id.* As to the legal malpractice claim, the objections denied the allegation generally and stated that Donna and Harry had failed to provide any documentary evidence to support their claim that Richard had prepared the power of attorney, and that even if Richard had prepared it, the estate suffered no damages as a result. *Id.*

On January 14, 2005, the attorney for Farber and Sofferin sent a letter to Harry Partrich's attorney forwarding a proposed Petition Seeking Revocation and Forfeiture of Benefits. Partrich Opposition, Exhibit 15. The letter again demanded settlement of $175,000 and the various personal property. The attached Petition argued for revocation on the grounds that Harry Partrich had caused Joan's medical services to be discontinued at a time when she was capable of sustaining life, that it was based on a power of attorney that he knew to be invalid based upon a lack of competency to sign the document, and that

6

such conduct constituted manslaughter under *People v. Beardsley*, 150 Mich. 210 (1907). Partrich Opposition, Exhibit 16. The petition argued that as a result, MCL 700.2803 (the "slayer statute") operates to sever the interests of the decedent and the killer in property held by them at the time of killing into tenancies in common and requires the killer to forfeit all intestate interest in the property. *Id.* Harry again refused to negotiate or settle, and the petition was filed on January 24, 2005.

In response to the petition, Harry filed a motion for summary disposition and for sanctions, arguing that Michigan law does not permit the imposition of criminal liability for death related to the withdrawal or withholding of medical treatment. Partrich Opposition, Exhibit 17 (citing *In re Rosebush,* 195 Mich. App. 675 (1992); *People v. Bowles*, 461 Mich. 555 (2000)).

The probate judge, Judge Barry Grant, issued an opinion on January 16, 2007, that found the forfeiture petition to be sanctionable under MCR 5.113(A) because it did not disclose the precedent that "the withdrawal or withholding of life sustaining treatment does not constitute manslaughter or any other felony under Michigan law." The court granted sanctions in the amount of $10,000, about one-fourth of what Harry sought as sanctions. Partrich Summary Judgment Motion, Ex. 14. The petition was dismissed with prejudice on March 28, 2007. Partrich Summary Judgment Motion, Ex. 15.

On September 27, 2007, Harry brought this action against Farber and Sofferin for malicious prosecution, abuse of process, and intentional infliction of emotional distress. The action was brought in Oakland County Circuit Court and removed to this Court on November 13, 2007 based upon this Court's diversity jurisdiction.

On June 2, 2009, this Court granted in part and denied in part a motion to dismiss brought by Donna Farber and joined by Steven Sofferin.[1]  The Court found that the complaint failed to state a claim for malicious prosecution and intentional infliction of emotional distress and dismissed those claims as a matter of law.  The Court, however, found that the allegations in the complaint did state a prima facie case for abuse of process, and denied Farber and Sofferin's motion to dismiss that claim.

There are now three motions for summary judgment before the Court, one by Harry Partrich and one each by Donna Farber and Steven Sofferin.

In support of her motion for summary judgment, Farber has submitted an expert report by Mark Nelson, an attorney at Butzel Long, which opines that Grant was incorrect in ruling that Farber and Sofferin's objections and petition in the probate actions were sanctionable, because in Nelson's opinion the objections and petition were based in a good faith argument for the extension of current law.

In support of his motion for summary judgment, Partrich has submitted deposition testimony from Farber and Sofferin that tends to show that they never reviewed the medical records received in the probate action, Farber dep. p. 101, and that neither Farber or Sofferin believed that Harry had in fact intentionally caused Joan's death.  See e.g., Sofferin dep. p. 174 ("I don't believe he intentionally ... meant for her to die");  Farber dep. p. 104 ("Q. ... Is it your position that Harry Partrich feloniously and intentionally caused your mother's death?  A: No").

---

[1]The earlier motion was entitled a motion for summary judgment, but was brought and decided on the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

8

**LEGAL STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

**ANALYSIS**

In order for a plaintiff to recover upon a theory of abuse of process, the plaintiff "must plead and prove (1) an ulterior purpose, and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v. Dozorc*, 412 Mich. 1, 30 (1981) (citing *Spear v. Pendill*, 164 Mich. 620, 623 (1911)). In denying Farber's earlier motion to dismiss, this Court found that the complaint adequately alleged facts supporting both elements of the cause of action. The Court held that Partrich had adequately alleged that in filing the objections and the forfeiture petition, Farber and Sofferin had an ulterior purpose of extorting $175,000 from Harry Partrich. The Court also held that the complaint adequately alleged the second element of the cause of action, an act in the use of process which is improper in the regular prosecution of the proceedings. Specifically, the Court held that:

> Here it can be said that Farber and Sofferin were using properly issued process in the probate action for the collateral purpose of extorting money directly from Partrich to her and her brother, whereas the purpose of the objections and petition was to have Partrich's interest in jointly held property severed from her mother's and prevent him from inheriting her property. The probate court did not have [the] power to award

9

Farber and Sofferin $175,000 in damages directly from Partrich; it only had the power to make determinations as to Joan Partrich's estate.

Order Granting In Part and Denying In Part, Docket entry 20.

Harry Partrich's motion for summary judgment argues that this ruling mandates summary judgment in his favor. He argues that it is undisputed that Farber and Sofferin had an ulterior purpose in initiating the probate proceedings, as well as in filing the objections to the final accounting and the petition for seeking forfeiture and revocation of benefits. Further, Partrich argues that it is undisputed that payment of $175,000 was never sought by the defendants in the probate action because this is not the type of relief available with respect to the accusations made against him.

Farber and Sofferin argue in their motions for summary judgment that the relief sought in Farber's objections was consistent with, not collateral to, the settlement demands. The demand is consistent, they argue, because Joan Farber died intestate, and therefore if Harry Partrich's interest as a surviving spouse were forfeited or revoked under the slayer statute, Joan Partrich's one-half interest in the couples' $350,000 joint account (or $175,000), would pass to Joan's surviving descendants under Michigan's intestacy laws. MCL 700.2103(a). The facts establish that Joan's surviving descendants, other than Harry, are her children, Donna Farber and Steven Sofferin. Farber and Sofferin argue that if the probate court had granted Farber and Sofferin's Petition Seeking Forfeiture, it could have awarded Farber and Sofferin $175,000 from Joan Partrich's estate and therefore, they argue, the $175,000 settlement demand is not "collateral to" but rather consistent with the purpose requested by the objections and petition.

To recover on a theory of abuse of process, "a party must plead and prove an ulterior purpose and an act in the use of process that is improper in the regular prosecution of the proceeding." *Young v. Motor City Apartments, Ltd.*, 133 Mich. App. 671, 678 (1984) (citing

10

*Spear v. Pendill*, 164 Mich. 620, 623 (1911)).  As explained by the Michigan Court of Appeals, "[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.  There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort'" *Three Lakes Assn v. Whiting*, 75 Mich. App. 564, 573 (1977) (quoting Prosser, Torts (4th ed.) § 121, p. 857).

On the undisputed facts on the record, set forth above, Harry Partrich's claim for abuse of process fails because he cannot demonstrate an act in the use of process that is improper in the regular prosecution of the proceeding.  The aim of the objections and petition in the probate action were to sever Harry Partrich's interest in Joan Partrich's estate and deny him the right to inherit her assets.  By operation of the Michigan intestacy statute, the persons that would then inherit Joan Partrich's assets would be her only remaining heirs, Donna Farber and Steven Sofferin.  Thus, the advantage sought by Farber and Sofferin was not "collateral" to the process issued in the probate proceeding but rather consistent with it.  On these facts, therefore, Harry Partrich's claim for abuse of process fails.

Harry argues that Farber and Sofferin's settlement demand constituted abuse of process because even if their slayer-statute claim against Harry had merit, there would in fact be a complicated analysis of Harry's and Joan's joint assets and the most that could occur would be that some portion of the assets themselves would directly be conveyed to the Probate Court for Joan's estate, not to the defendants directly.  Harry also argues that

costs and fees would be taken out and that the amount awarded, after taking out various fees, would be less than $175,000.

The Court is not persuaded. First, it is clear that malicious purpose alone cannot sustain an abuse of process claim. *Friedman v. Dozorc*, 412 Mich. at 31. Nor is it abusive to make a settlement demand. It is only abuse of process where legal process is used to obtain an improper object that is outside the purpose of the litigation. The fact that the assets might be conveyed to the probate court and then conveyed to the defendants does not change the fact that the probate court had the power to issue rulings depriving Harry of the rights to Joan's property, which was essentially cash, and awarding those rights to Farber and Sofferin. If the probate court ruled in favor of Farber and Sofferin, the end result would be the transfer of assets from Harry Partrich to Farber and Sofferin, which is consistent with the settlement demand. Further, there is no authority for the proposition that the fact that the amount the probate court might award to Farber and Sofferin could be less than the $175,000 sought makes the demand collateral.

This case is therefore different from *Three Lakes*, in which the court held that the plaintiffs, environmental action groups, had stated a prima facie claim for abuse of process. In *Three Lakes*, the plaintiffs alleged that a real estate company had improperly brought a previous $2.5 million lawsuit ("Action 926") against them for the purpose of preventing the plaintiffs from opposing the real estate company's condominium development and then offered to dismiss Action 926, without getting any money at all from the plaintiffs, if the plaintiffs agreed to stop all opposition to the condominium development, including a previous Environmental Protection Act claim ("Action 849"). *Three Lakes Ass'n*, 75 Mich. App. at 568. The *Three Lakes* court held that the real estate company's settlement offer in Action 926, where it offered to dismiss the action without receiving any money in

exchange for the environmental group's ceasing all legal opposition to the condominium development, including the EPA action, was a specific, identifiable act that showed that purpose for bringing Action 926 was not to collect damages, the ostensible purpose of that action, but rather to impede the environmental group in its efforts to oppose the development of the condominium. *Three Lakes Ass'n*, 75 Mich. App. at 570-71, 574.

Here, on the other hand, the objections and the petition for revocation, if successful, would ultimately transfer the assets of Joan Partrich from Harry Partrich to Donna Farber and Steven Sofferin. The settlement demand sought an amount of money roughly equivalent to what the facts show would at least arguably have been the amount of assets at issue in the joint account. Whether or not the defendants' claim asserted against Harry Partrich under the slayer statute claim was baseless, malicious or frivolous is ultimately not dispositive. Groundless claims or defenses alone do not create a cause of action for abuse of process. *Bonner v. Chicago Title Ins. Co.*, 194 Mich. App. 462, 472-73 (1992). Here, the demand was not collateral to the objections and the petition but was rather consistent with them. This fact pattern is more consistent with *Young v. Motor City Apartments*, 133 Mich. App. 671 (1984), in which the Court held that allegations that a previous legal malpractice lawsuit was brought for the purpose of extorting payment from the plaintiffs and their malpractice carrier was insufficient to allege abuse of process because these purposes "describe nothing more than objectives commonly sought by claimants who initiate lawsuits, *inter alia*, to prevail over the defenses and counterclaims of the opposing party and obtain a judgment authorizing appropriate damages." *Young*, 133 Mich . App. at 681-82. The plaintiff here, like in *Young*, cannot prove an act in the use of process that is improper in the regular prosecution of the proceeding and summary judgment must therefore be granted in favor of Farber and Sofferin and against Partrich.

Partrich argues that the Court has already ruled in his favor on the abuse of process claim by denying Farber's previous motion to dismiss. Partrich argues that the Court's previous ruling on defendants' motion to dismiss is the law of the case, that the defendants' did not challenge the Court's refusal to dismiss the abuse of process claim by filing a motion for reconsideration, and therefore the defendants cannot challenge the Court's holding that the complaint sufficiently pled that the settlement demand was "collateral." In making this argument, however, Partrich misunderstands the different standard that is applied to a motion to dismiss and a motion for summary judgment. On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court is charged with determining if the facts in the complaint state a valid claim, and the Court is not to look beyond the facts alleged in the complaint. On a motion for summary judgment, on the other hand, the Court looks beyond the complaint to determine whether the undisputed facts in the record support judgment as a matter of law for one party or another. Thus, in considering the present motion for summary judgment, unlike when it decided the prior motion to dismiss, the Court appropriately considers the undisputed facts that Farber, Sofferin and Harry Partrich are Joan Partrich's only heirs, and that if Harry Partrich were removed from inheriting Joan Partrich's assets those assets would then go to Farber and Sofferin. The Court also appropriately considers the undisputed fact that the joint bank account that was the primary asset of Joan and Harry Partrich contained approximately $350,000 and that the portion that would go to the estate of Joan Partrich if the bank account were converted into a joint tenancy might conceivably be $175,000, which is the amount of the settlement demand. On these undisputed facts, the settlement demand for $175,000 was not an act that in itself corroborates an ulterior motive.

14

Partrich also argues that Farber and Sofferin initiated legal proceedings in the first place on their attorney's representation that the estate might have a malpractice action against one of Joan Partrich's treating physicians, but they never took any actions in furtherance of this purpose. Partrich has submitted an email sent from his probate attorney to Farber and Sofferin's probate attorney, which Partrich asserts establishes that the estate was opened for the purposed of pursuing a medical malpractice action against Joan's treating physicians. This argument is not persuasive. The subjective understanding of Partrich's attorney, or Partrich himself, as to the purpose of opening the estate is not relevant to the legal questions at issue here. As the Court noted in its earlier order on Farber's motion to dismiss, this argument also goes beyond the assertions in the complaint, which points to the Objections and Petition as the acts that constitute abuse of process, not the opening of the estate, and therefore the court will not consider these allegations in deciding the motion for summary judgment. Furthermore, there is nothing in the petition to open the estate that limits the opening of the estate to the pursuit of a medical malpractice action, and whatever communications were made between the probate attorneys for Partrich on one hand and those of Farber and Sofferin on the other, or what Partrich subjectively understood to be the purpose of opening an estate, are not relevant to the question of whether any filings made in the probate action were abusive for the purposes of the tort of abuse of process.

The parties raise other issues in their briefs: whether the Petition and Objections were sufficiently supported by facts and law; whether the rulings of the probate court are entitled to preclusive effect; whether contemplated revisions of the slayer statute would support a claim for failure to provide medical care; and whether Judge Grant's issuance of sanctions was supported by law. The Court will not reach any of these issues because its holding

15

that there was no improper act in the use of process disposes of the sole remaining claim in this case.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff Harry Partrich's Motion for Summary Judgment (docket no. 35) is **DENIED**;

It is further **ORDERED** that Defendant Donna Farber's Motion for Summary Judgment (docket no. 34) is **GRANTED**; and

It is further **ORDERED** that Defendant Steven Sofferin's Motion for Summary Judgment (docket no. 33) is **GRANTED**.

                                      s/Stephen J. Murphy, III
                                      STEPHEN J. MURPHY, III
                                      United States District Judge

Dated: December 14, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 14, 2009, by electronic and/or ordinary mail.

                                      Alissa Greer
                                      Case Manager